UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

JENNINE S. COOK

                    Plaintiff,

      v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                    Defendant.

**DECISION
and
ORDER**

**15-CV-00770-LGF
(consent)**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

APPEARANCES:            LAW OFFICES OF CLARK & JORDAN-PUGH
                                Attorneys for Plaintiff
                                AMANDA JORDAN-PUGH, of Counsel
                                1207 Delaware Avenue
                                Buffalo, New York 14209

                                JAMES P. KENNEDY
                                ACTING UNITED STATES ATTORNEY
                                Attorney for Defendant
                                EMILY FISHMAN
                                Assistant United States Attorney, of Counsel
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York 14202, and

                                STEPHEN P. CONTE
                                Regional Chief Counsel
                                United States Social Security Administration
                                Office of the General Counsel, of Counsel
                                26 Federal Plaza
                                Room 3904
                                New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On June 22, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. (Dkt. No. 11). The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, filed by Plaintiff on February 15, 2016 (Dkt. 8), and by Defendant on April 14, 2016 (Dkt. 9). For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**BACKGROUND and FACTS**

Plaintiff Jennine Cook ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying her application for disability benefits for Supplemental Security Income ("SSI") benefits under Title II of the Act, and Social Security Disability Insurance ("SSDI") benefits under Title XVI of the Act, together ("disability benefits"). Plaintiff, born on November 6, 1973 (R. 149), alleges that she became disabled on July 17, 2012, when she stopped working as a result of spinal and bilateral knee impairments. (R. 161).

Plaintiff's application for disability benefits was initially denied by Defendant on December 14, 2012 (R. 88), and, pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Bruce R. Mazzarella ("Judge Mazzarella" or "the ALJ") on February 20, 2014, in Buffalo, New York, where Plaintiff, represented by Courtney Quinn, Esq. ("Quinn") appeared and testified. (R. -78). Vocational expert ("VE") Jay

Steinbrenner also appeared and testified. (R. 78-86). The ALJ's decision denying Plaintiff's claim was rendered on April 9, 2014. (R. 24-33). Plaintiff requested review by the Appeals Council, and on July 1, 2015, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-4). This action followed on August 28, 2015, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Dkt. No. 1).

On February 15, 2016, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 8) ("Plaintiff's Memorandum"). Defendant filed, on April 14, 2016, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 9) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on May 5, 2016 ("Plaintiff's Reply Memorandum") (Dkt. No. 10). Oral argument was deemed unnecessary.

## DISCUSSION

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error. *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

A.  **<u>Standard and Scope of Judicial Review</u>**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[2] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[3] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional

---

[3] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

5

capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

**B.      Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. §

6

404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In this case, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since July 17, 2012, Plaintiff's alleged onset date of disability. (R. 26). Plaintiff does not contest this finding.

C.      **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities." If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends. 20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b). The step two analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

7

In this case, the ALJ determined that Plaintiff suffered from the severe impairments resulting from a motor vehicle accident causing chronic neck pain with evidence of radiculopathy, chronic low back pain with evidence of degenerative disc disease, bilateral knee pain status post arthroscopic right knee surgery on December 2012,[4] and obesity, and that Plaintiff's headaches and sleep apnea were not severe. (R. 26-27). Plaintiff does not contest the ALJ's findings under step two of the disability analysis

### D. Listing of Impairments

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria for disability under Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"), specifically 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02 ("§ 1.02") (Dysfunction of a Major Joint), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.04 ("§ 1.04") (Disorders of the spine). (R. 27). Plaintiff does not contest the ALJ's step three findings.

### E. Residual functional capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden

---

[4] Plaintiff underwent right knee arthroscopic surgery on December 6, 2012. (R. 30).

shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

In this case, the ALJ found that Plaintiff had the residual functional capacity to perform light work with limitations including sitting, standing and walking for eight hours a day with normal breaks and meal periods, lifting and carrying 20 pounds occasionally and 10 pounds frequently, and occasional stooping, crouching, kneeling and climbing stairs. (R. 28).

Plaintiff contends that the ALJ's residual functional capacity assessment of Plaintiff is erroneous as the ALJ failed to include limitations resulting from Plaintiff's chronic pain. Plaintiff's Memorandum at 17. In particular, Plaintiff contends that the ALJ failed to include consideration of all of the evidence in the record, perform a function-by-function analysis of Plaintiff, and that the ALJ's finding that Plaintiff was able to stand or walk for six hours in an eight-hour workday, walk, lift, carry, push and pull was not supported by

substantial evidence. Plaintiff's Memorandum at 15-17. Defendant maintains that the ALJ's residual functional capacity assessment is supported by the findings of Abrar Siddiqui, M.D. ("Dr. Siddiqui"), William N. Capicotto, M.D. ("Dr. Capicotto"), Pratibha Bansal, M.D. ("Dr. Bansal"), and Graham Huckell, M.D. ("Dr. Huckell"). Defendant's Memorandum at 18-19. Plaintiff's motion on this issue is without merit. As Defendant maintains, Plaintiff's knee injury was resolved within one year of Plaintiff's alleged onset date of July 17, 2012. In particular, on August 2, 2012, one month after Plaintiff's accident, Dr. Huckell prescribed a brace and crutches for Plaintiff's left knee, and opined that Plaintiff would be immobilized for six weeks after which Plaintiff would be weaned from the brace and begin physical therapy. (R. 288). On October 8, 2012, Dr. Huckell completed a physical examination of Plaintiff's left knee where Plaintiff reported improvement with physical therapy and no pain. (R. 306). On October 23, 2012, Lisa M. Lewis ("P.T. Lewis"), Plaintiff's physical therapist, noted that Plaintiff reported walking twice around Delaware Park[5] without any pain, engaging in recreational activities that included bowling, playing pool, going to the casino and playing darts, and the ability to climb stairs without the assistance of a railing. P.T. Lewis evaluated Plaintiff's quadricep muscle strength as four out of five on a five-point scale, noted that Plaintiff walked with a non-antalgic (abnormal) gait and that Plaintiff exhibited normal range of motion of her left knee. (R. 318-23, 578). On November 30, 2012, Plaintiff returned to Dr. Huckell with reports of right knee pain. Dr. Huckell recommended Plaintiff undergo a cortisone

---

[5] Plaintiff testified that the distance was approximately one mile.

injection to alleviate Plaintiff's knee pain which Plaintiff declined in favor of right knee arthroscopic surgery. (R. 355).

On November 16, 2012, Dr. Siddiqui completed a consultative internal medical examination on Plaintiff and noted that Plaintiff reported activities of daily living that include cooking three times each week, laundry and shopping, taking showers and bathing, watching television, listening to the radio, playing sports, socializing with friends, and hobbies of writing poetry and cooking. (R. 412). Plaintiff reported that her pain medication reduced her pain to a level of two on a 10 point scale. Upon examination, Dr. Siddiqui assessed Plaintiff with normal gait, the ability to walk on heels and toes without difficulty, a normal stance, and the ability to sit, stand, climb, push, pull, and carry heavy objects. (R. 415).

On December 6, 2012, Dr. Huckell completed arthroscopic surgery on Plaintiff's right knee (R. 594-596), and during a follow-up examination on December 18, 2012, Plaintiff reported pain of a level of two on a 10 point scale. (R. 622-26). On January 22, 2013, Plaintiff reported that she experienced soreness in her right knee only during bad weather and Dr. Huckell opined that Plaintiff could return to her normal activities as tolerated. (R. 610-12).

On March 27, 2013, Dr. Bansal, a pain specialist, completed a physical examination on Plaintiff who reported lower back and neck pain, and bilateral knee and hand pain. Upon examination, Dr. Bansal noted that Plaintiff exhibited a normal gait, stance and posture, and noted that Plaintiff's lumbar spine exhibited tenderness upon palpation, some reduced range of motion ("ROM"), and prescribed a home-based exercise program for Plaintiff's back pain. (R. 519-27). Dr. Bansal noted similar findings

on April 1, 2013, and April 18, 2018, and noted that Plaintiff was to begin physical therapy. (R. 528-29).

On April 25, 2013, Plaintiff reported for physical therapy at Family Care Physical Therapy ("Family Care"), where Plaintiff reported no restriction to her activities of daily living and moderate limitations to engaging in recreational activities that include bowling, darts, swimming and tennis. (R. 517). On May 23, 2013, after completing nine sessions of physical therapy, Plaintiff reported that she was progressing. (R. 506-13, 509).

On May 30, 2013, Plaintiff visited Dr. Bansal for cervical pain, reported a 70 percent improvement in her lower back pain, that her knee was feeling better, and requested physical therapy for neck and upper back pain. (R. 639).

On June 4, 2013, during a physical therapy evaluation at Family Care, Plaintiff reported moderate to severe limitations to completing activities of daily living that included mopping the floor and washing dishes. (R. 508).

On June 25, 2013, Conrad R. Williams, M.D. ("Dr. Williams"), noted that Plaintiff reported hydrocodone was helping to relieve Plaintiff's neck pain, and noted that Plaintiff continued to be disabled. (R. 498). On September 30, 2013, Plaintiff reported that the hydrocodone (pain) medication that Dr. Williams prescribed was helping Plaintiff to complete light household chores, cook, and walk her dog (R. 657-60), and on December 17, 2013, reported that the hydrocodone was helping her to complete household chores, shop and enjoy quality time with her family. (R. 659).

On February 20, 2014, Plaintiff testified that she no longer received medical treatment for her knees (R. 59), and engaged in daily activities that included cleaning, laundry, grocery shopping, and driving (R. 63), writing poetry and going to the movies (R.

66), that she was able to walk for one mile at a time (R. 69-70), and was able sit for 20 minutes at a time before needing to alternate positions. (R. 67-68).

In accordance with the foregoing, substantial evidence therefore supports the ALJ's determination that Plaintiff has the residual functional capacity to perform light work that includes standing or walking for six hours in an eight-hour workday, lifting, carrying, pushing and pulling. Plaintiff's motion on this issue is denied.

Plaintiff's further contention that the ALJ erred in not providing a function-by-function evaluation of Plaintiff's limitations, Plaintiff's Memorandum at 15, is also without merit. In this case, the ALJ's step four findings provide an adequate basis for this court's meaningful review and are supported by substantial evidence. *See* Discussion, *supra*, at 8-13. No error therefore results from the ALJ's decision to forgo a function-by-function evaluation of Plaintiff's limitations. *See Cichocki v. Astrue*, 729 F.3d 172, 173-74 (W.D.N.Y. Sept. 5, 2013) (no remand where the ALJ's residual functional capacity assessment is supported by substantial evidence and does not include a function-by-function evaluation of the claimant's limitations). Plaintiff's motion on this issue is denied.

Credibility of Plaintiff's Subjective Complaints

In this case, the ALJ, as required, evaluated Plaintiff's impairments under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, and determined that although the record established that Plaintiff had the severe impairments of fibromyalgia, depression and anxiety, Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent the statements were inconsistent with Plaintiff's testimony. (R. 20).

13

> When evaluating pain in assessing a claimant's residual functional capacity ALJs must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function. The RFC assessment must describe the relationship between the medically determinable impairment and the conclusions of the RFC which have been derived from the evidence, and must include a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence.

*See Mitchell v. Chater*, 918 F.Supp. 675, 684 (W.D.N.Y. Oct. 31, 1995). While ALJs have discretion to evaluate a claimant's credibility and arrive at independent judgments regarding the claimant's pain, the credibility assessments must rely on medical findings and other evidence to evaluate the true extent of the alleged pain. *Id.*

In this case, the ALJ found Plaintiff's testimony regarding her pain unreliable for several reasons. Specifically, the ALJ found that the Plaintiff's testimony that she suffered from chronic back and neck pain, used a brace to alleviate the pain in the right knee, and the level of pain the Plaintiff reported to her medical providers (R. 29-30), was inconsistent with Plaintiff's testimony to her activities of daily living that included driving, shopping, socializing with friends, doing laundry and dishes and household chores, and Plaintiff's reports of improved pain to Drs. Bansal (R. 528-33), Huckell (R. 610), and Siddiqui (R. 411-12). The ALJ's credibility assessment of Plaintiff is therefore supported by substantial evidence.

Moreover, it is the function of the ALJ, not the court, to assess the credibility of witnesses. *See Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013). A claimant's testimony is only entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would

produce those symptoms. *See Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)). No such objective evidence is apparent in this case. Plaintiff's motion for remand on this issue is accordingly denied.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 8) is DENIED; Defendant's motion (Doc. No. 9) is GRANTED. The Clerk of Court is ordered to close the file.

So Ordered.

/s/ Leslie G. Foschio

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    March 1, 2018
            Buffalo, New York